**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **ISRAEL CURTIS**, <br><br>     Plaintiff, <br><br> vs. <br><br> **DONALD SOWELL**, individually and in his official capacity as the Grimes County Sheriff; **TOMMY GAGE**, individually and in his official capacity as the Montgomery County Sheriff; **JOSEPH SCLIDER**; **DAVID COOK**; **ALTON NEELY**; **TUCK McLAIN**; **GRIMES COUNTY, TEXAS**; and **MONTGOMERY COUNTY, TEXAS**, <br><br>     Defendants | **Case No. 17-cv-810** |

## ORIGINAL COMPLAINT

The Plaintiff, on information and belief, alleges and states the following:

1.      This Court has jurisdiction insofar as the Plaintiff brings claims against the Defendants under 42 U.S.C. § 1983.

2.      Venue is proper insofar as the Defendants are located in or reside in the Houston Division of the Southern District of Texas.

### Parties

3.      Plaintiff Israel Curtis is a resident of Grimes County, Texas.

4.      Defendant Donald Sowell is the sheriff of Grimes County, Texas.

5.      Defendant Tommy Gage is the former sheriff of Montgomery County, Texas.

6.      Defendant Joseph Sclider is a lieutenant in the Montgomery County Sheriff's Office, and he is the commander of the Montgomery County Auto Theft Task Force ("MCATTF").

7.      Defendant David Cook is a deputy in the Grimes County Sheriff's Department, and he is assigned to the MCATTF.

8.      Defendant Alton Neely is a deputy in the Montgomery County Sheriff's Department, and he is assigned to the MCATTF.

9.      Defendant Tuck McLain is the district attorney of Grimes County.

10.     Defendant Grimes County is a political subdivision of the State of Texas.

11.     Defendant Montgomery County is a political subdivision of the State of Texas.

**Factual Allegations**

12.     The Plaintiff incorporates by reference the Third Amended Complaint (Doc. 39-2) in *Leslie W. Shipman v. Donald Sowell, et al.*, Case No. 4:16-cv-00692 (S.D. Tex.), as if fully set forth herein. The Plaintiff alleges that the Defendants participated in a criminal and civil conspiracy as outlined in that complaint.

13.     In 2015, Leslie W. "Les" Shipman of Anderson, Texas made arrangements to sell his automobile repair business and move to Tennessee.  As part of those arrangements, Mr. Shipman and his business partner, Jerry Williams, scheduled an automobile auction for June 27, 2015, and Mr. Shipman hired Plaintiff Israel Curtis, a professional auctioneer, to conduct the auction. Mr. Curtis had no prior dealings with Mr. Shipman or Mr. Williams before contracting to serve as auctioneer.

14.     As the auction began,  Lt. Sclider and other officers from the MCATTF and Grimes County Sheriff's Department raided Mr. Shipman's business, seizing 56 cars from the auction.  Lt. Sclider summoned a local television station to broadcast the raid, and he falsely indicated that the vehicles were stolen.  "State law gives the general public 20 days or so to register [automobiles] in their name," he told KBTX in a videotaped interview. "If they don't the police can presume they are stolen and at this point we are going to have to find the rightful

owner of these vehicles."  In reality, none of the vehicles were stolen, and Lt. Sclider knew that when he made the false statement.

23.     Lt. Sclider had a longstanding grudge against Mr. Shipman, and with a television crew on hand, he was not willing to admit that the raid was baseless and illegal.  Instead, he doubled down on his misconduct, arrresting Mr. Shipman, Mr. Williams, and Mr. Curtis for engaging in organized crime, even though he knew the charge was meritless.  Under Texas law, an organized crime charge must be supported by evidence that three or more people committed or conspired to commit one or more crimes specified in Texas Penal Code §71.02.  According to Lt. Sclider, the three arrestees had conspired to tamper with a government record, namely an automobile title.  As noted above, however, Mr. Curtis had no prior dealings with Mr. Shipman or Mr. Williams – he was simply an auctioneer who had been hired to conduct an auction on that particular day.  He only knew that he was supposed to show up and auction the automobiles.  Lt. Sclider admitted to Mr. Curtis that he was "caught up" in the arrests because Lt. Sclider needed a third defendant to support the organized crime charge.  Finally, the baseless allegation of record tampering was totally unrelated to the auction, and it had absolutely no connection to Mr. Curtis. The vehicle with the allegedly altered title had been sold months before the auction, well before Mr. Curtis became acquainted with Mr. Shipman or Mr. Williams.

24.     None of the 56 vehicles seized by the MCATTF and the Grimes County Sheriff's Department was stolen. Not one. The vehicles were supposedly seized as evidence, yet they were not evidence of any crime.  Some of the vehicles were not even part of the auction. Instead, they were vehicles belonging to Mr. Shipman's customers, and they were at his shop awaiting repairs. The Grimes County Sheriff's Office subsequently released one of those cars to its owner, but it did not release the remaining 55 cars.

26.    On September 17, 2015, Plaintiff's Counsel sent a letter to the Grimes County Grand Jury outlining Lt. Sclider's misconduct and asking the grand jury to reject all charges and instead investigate Lt. Sclider.  The letter was copied to Grimes County District Attorney Tuck McLain and Sheriff Gage, among others. On the same date, Plaintiff's Counsel sent a letter to Sheriff Gage demanding the return of the seized vehicles.

27.    On September 21, 2015, Plaintiff's Counsel published a blog post describing the misconduct of Lt. Sclider, and that post included a link to the letter to grand jurors. *See* "Montgomery County Auto Theft Task Force arrests first, investigates later", http://lawflog.com/?p=941. This embarrassed and enraged Lt. Sclider, Sheriff Sowell, Sheriff Gage, and Mr. McLain, so Mr. McLain persuaded the grand jury to indict Mr. Shipman, Mr. Williams, and Mr. Curtis, even though Mr. McLain knew that there was no factual or legal basis for the charge (and proving the old adage that a good prosecutor can get a grand jury to indict a ham sandwich).

28.    On November 24, 2015, Plaintiff's Counsel sent a letter to Sheriff Gage regarding the fact that Mr. Curtis said Lt. Sclider told him that he was "caught up" in the arrests so that Lt. Sclider would have a third person to support an organized crime charge. In the letter, Plaintiff's Counsel warned Sheriff Gage about his refusal to investigate Lt. Sclider and the MCATTF: "Under the circumstances, your department's passivity can only be interpreted as tacit approval or ratification of Lt. Sclider's actions."  Sheriff Gage did not investigate.

29.    On December 7, 2015, Plaintiff's Counsel sent a letter to Sheriff Sowell noting that none of the seized vehicles were stolen, and demanding their return. The letter included the following sentences:

> If you contend that there is some lawful basis for retaining the property seized from Mr. Shipman, please let me know within ten days of receipt of this letter. If I do not receive a response within that time, we will proceed with plans to sue the county for federal civil rights violations.

The letter also asked Sheriff Sowell to investigate the misconduct of Lt. Sclider. Sheriff Sowell never responded to the letter.

30.     Sheriff Sowell is an official policymaker for Grimes County. Sheriff Sowell knew that the MCATTF was a rogue organization, yet he aided its attempts to harass Mr. Shipman and drive him out of town. That ultimately led to the baseless arrest of Mr. Curtis. Among other things, Sheriff Sowell sent his deputies to support the baseless raid on Mr. Shipman's business. Sheriff Sowell knew that his department was holding vehicles that had no evidentiary value and were not related to any crime, yet he arbitrarily released one vehicle to its owner and refused to release any others. Sheriff Sowell also ratified the unlawful acts of Lt. Sclider and the MCATTF.

31.     Sheriff Gage is an official policymaker for Montgomery County. He had known for years that the MCATTF was a rogue organization, yet he failed to supervise or train the deputies assigned to MCATTF. After learning of the unlawful acts of his deputies with respect to Mr. Curtis, Sheriff Gage consistently failed to supervise them, instead ratifying their illegal acts. Furthermore, and as a result of the lack of supervision and training, the MCATTF officers continued to violate the civil rights of innocent persons. On August 31, 2016, for example, officers from the MCATTF arrested a young man on charges of stealing more than $100,000.00 worth of large equipment in Montgomery County. The charges were dismissed on September 8, 2016, however, because the officers had arrested the wrong person. The arrestee had the same name as the actual suspect, but the MCATTF had not bothered to confirm the identify of the man who was arrested.

32.     Grimes County District Attorney Tuck McLain knew that the organized crime charges against Mr. Curtis, Mr. Shipman and Mr. Williams were meritless, but he kept prosecuting them in retaliation for the September 17, 2015 letter to the grand jury and the

- 5 -

September 21, 2015 blog post. Mr. Curtis alleges, on information and belief, Mr. McLain advised and assisted the MCATTF before it seized the vehicles from Mr. Shipman's business. Mr. Curtis further alleges, on information and belief, that Mr. McLain advised Sheriff Sowell to retain Mr. Shipman's business records, including the vehicle titles that had no relationship to the 56 vehicles seized from the auction.

35.    On or about June 3, 2016, Defendant McLain recused himself from the pending state-court proceedings against Mr. Curtis. On October 24, 2016, all charges against Mr. Curtis were dismissed. The Defendants never had probable cause to believe that Mr. Curtis engaged in organized criminal activity or any of the other crimes for which he was charged. Meanwhile, the charges against Mr. Shipman and Mr. Williams were reduced to a single Class C misdemeanor for each defendant.

36.    As a result of his false arrest and the unlawful seizure of 56 vehicles, Mr. Curtis lost tens of thousands of dollars that he would have earned at the June 27, 2015 auction. As a result of the damage to his reputation, Mr. Curtis's auctioneering business collapsed and he lost hundreds of thousands of dollars.

## Claims

### *Count One: Civil Rights Violations*

37.    All previous paragraphs are incorporated herein by reference.

38.    The Defendants conspired to violate and did violate 42 U.S.C. § 1983 by depriving Mr. Curtis of his Constitutional rights, particularly his Fourth, Fifth and Fourteenth Amendment rights. The Defendants seized and prosecuted Mr. Curtis without probable cause. And in their effort to selectively prosecute Mr. Shipman and retaliate against him for exercising his First Amendment rights, they arbitrarily seized and prosecuted Mr. Curtis.

39.     The Defendants are also liable for damages under the stigma-plus-infringement doctrine, *see Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995), because Lt. Sclider knowingly made false and defamatory statements suggesting that Mr. Curtis was involved in organized crime and was selling stolen vehicles.

*Count Two: Tortious Interference*

40.     All previous paragraphs are incorporated herein by reference.

41.     The natural-person Defendants tortiously interfered with the business relationships of Mr. Curtis. Mr. Curtis brings tortious intereference claims against these Defendants strictly in their individual capacities. Notwithstanding any other provision in this complaint, Mr. Shipman does not assert state-law claims against any government Defendants or persons acting in an official capacity.

*Count Three: False Arrest and Malicious Prosecution*

42.     All previous paragraphs are incorporated herein by reference.

43.     The natural-person Defendants, acting in their individual capacities, falsely arrested and maliciously prosecuted Mr. Curtis.

*Count Four: Civil Conspiracy*

44.     All previous paragraphs are incorporated herein by reference.

45.     The natural-person Defendants, acting in their individual capacities, participated in a civil conspiracy to engage in the unlawful acts listed above.

**Request for Relief**

Wherefore, the Plaintiff requests that this Court:

        a.        Award compensatory damages against all Defendants;

        b.        Award punitive damages against the natural-person Defendants;

        c.        Award costs of this action to the Plaintiff;

        d.        Award reasonable attorney fees and costs to the Plaintiff;

        e.        Award all other relief to which the Plaintiffs are entitled, including other declaratory and equitable relief.

THE PLAINTIFF DEMANDS A JURY TRIAL.

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
SDTX Bar No. 727184
21 Bennett Avenue #62
New York, New York 10033
Tel: (979) 985-5289
Fax: (979) 530-9523
*tyclevenger@yahoo.com*

**/s/ John T. Quinn**
John T. Quinn
SDTX Bar No. 8861
404 B East 27th Street
Bryan, Texas 77803
Tel.: (979) 822-4766
*john@quinnlaw.com*

ATTORNEYS FOR PLAINTIFF
ISRAEL CURTIS